**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 28 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ELLA PETTIS,

       Plaintiff-Appellant,

v.

U. S. WEST COMMUNICATIONS,
INC.,

       Defendant-Appellee,

GRETCHEN HEDGE,

       Defendant.

No. 97-2210
(D.C. No. CIV-95-1549-JC)
(District of New Mexico)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Circuit Judge, **MURPHY**, Circuit Judge, and **McWILLIAMS**,
Senior Circuit Judge.

---

In 1991 and 1992, U. S. West Communications, Inc. ("U. S. West"), a Colorado

corporation doing business in New Mexico, instituted a reduction-in-force ("RIF")

program for its operation in New Mexico, which program ultimately affected hundreds of

its employees. As a result thereof, Ella Pettis, who had been employed by U. S. West and

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3

its predecessor since 1963, lost her job as an Equal Employment Opportunity ("EEO") Consultant and her employment with U. S. West was terminated. She later brought suit against U. S. West for unlawful termination of her employment. The district court thereafter granted U. S. West's motion for summary judgment and Pettis now appeals the judgment entered.

On December 19, 1995, Pettis filed a complaint in the United States District Court for the District of New Mexico, naming as defendants U. S. West and two of its employees, Gretchen Hedge and Darlene Siedschlaw, individually. Pettis identified herself in the complaint as a Hispanic female citizen of the United States who, at the time of her discharge, had "credited service" with U. S. West of over 26 years and that she was then 47 years of age. Hedge and Siedschlaw were described in the complaint as employees of U. S. West, each of whom "performed most or all of the actions that form the basis for this complaint . . . ." Under the heading "Factual Allegations" Pettis set forth, in considerable detail, the chronology leading up to her discharge, including U. S. West's decision in 1991 and 1992 to institute a RIF program, which involved, *inter alia,* declaring her as "surplus," and performing a subsequent "evaluation" to determine whether she should be retained in her then current position as an EEO Consultant or be offered another position with the company, which "evaluation" was conducted, in the

main, by Hedge and Siedschlaw.[1]

Based on the "Factual Allegations" in her complaint, Pettis alleged five claims for relief: (1) U. S. West intentionally interfered with her right to enhanced retirement benefits and, in so doing, violated 29 U.S.C. § 1001, *et seq.* ("ERISA"); (2) the defendants, apparently all three, violated the provisions of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; (3) U. S. West terminated her employment based on her race, Hispanic, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*; (4) Hedge and Siedschlaw conspired with "discriminatory animus" based on age and race to deprive her of her constitutional right to equal protection in violation of 42 U.S.C. § 1985; and (5) U. S. West under New Mexico law breached its contract with her.

On or about April 15, 1996, a joint answer was timely filed on behalf of U. S. West and Hedge.[2]  Although it is not in the record before us, it would appear that U. S. West and Hedge, on July 10, 1996, filed a motion to dismiss claims made against each of them.  On August 29, 1996, the district court granted Hedge's motion to dismiss and dismissed with prejudice claims 1, 2, 3 and 5 in the complaint against Hedge in her individual capacity

---

[1]A part of U. S. West's RIF program was to reduce the number of EEO Consultants from twelve to seven.  Seventy-eight U. S. West employees applied for the seven EEO Consultant positions, and Pettis was one of the applicants.

[2]We are advised that defendant Siedschlaw was never served with process. Accordingly, Siedschlaw is not a party to the present appeal.

and, at the same time, dismissed with prejudice claim 4 of the complaint against both Hedge and U. S. West. Claims 1, 2, 3 and 5 against U. S. West remained unresolved.

On or about March 10, 1997, U. S. West filed a motion for summary judgment, supported by a memorandum brief with various attachments thereto, which included excerpts from numerous depositions. Pettis apparently filed a response to U. S. West's motion for summary judgment, but, again, we cannot find it in the record before us.

In any event, on June 3, 1997, the district court, in an unpublished memorandum opinion, granted U. S. West's motion for summary judgment on the remaining claims against U. S. West, i.e., claims l, 2, 3 and 5. Specifically, the district court held that on the record before it, U. S. West was entitled to summary judgment on Pettis' claims based on ERISA, age and race discrimination, as well as Pettis' claim based on implied contract under New Mexico state law.

As concerns Pettis' ERISA claim, the district court held that Pettis had not made a sufficient showing that in not rehiring Pettis U. S. West had a specific intent to interfere with her pension benefits. In this regard, Pettis, though terminated, still had certain pension benefits, though she, of course, no longer had a right to enhance those benefits by continued employment with U. S. West. *See Babich v. Unisys Corp.,* 859 F. Supp. 454, 457-58 (D. Kan. 1994); *Clark v. Resistoflex Co.,* 854 F.2d 762, 771 (5th Cir. 1988).

As concerns Pettis' claim based on age and race discrimination, the district court concluded that Pettis had not made a sufficient showing that she was treated less favorably

- 4 -

than other employees who were not within the age or race protected classes as she was required to do under *Rea v. Martin Marietta Corp.,* 29 F.3d 1450 (10th Cir. 1994). In this connection, the district court noted that of the 17 applicants who ranked higher than Pettis, nine were 40 years of age or older, and that of four Hispanic applicants, two were offered EEO Consultant positions.

In connection with Pettis' claim of breach of implied contract, the district court held that under New Mexico law her employment with U. S. West was "at will" employment, citing *Hartbarger v. Frank Paxton Co.,* 857 P.2d 776 (N.M.), *cert. denied,* 510 U.S. 1118 (1993), and that U. S. West's at-will provision in its Code of Business Ethics, which Pettis had read, made any expectations of continued employment unreasonable.

Petits' basic position on appeal is that summary judgment was improper because there were genuine issues of material fact which precluded summary judgment. Fed. R. Civ. P. 56(c) provides, in part, as follows:

> ". . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . ."

In *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." In *Catrett,* the Court went on to add that Rule 56 does not require that "the moving party support its motion with affidavits or other similar materials <u>negating</u> the opponent's claim." *Id.* at 323. (Emphasis in original.)

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986), the Supreme Court stated that where a defendant in a "run-of-the-mill civil case" files a pre-trial motion for summary judgment, "the judge must ask himself <u>not</u> whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." (Emphasis added.) In *Anderson,* the Court also stated that "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. S*ee also Carey v. U.S. Postal Serv.,* 812 F. 2d 621, 623 (10th Cir. 1987).

As stated, on appeal Pettis' basic position is that the case was not "ready" for summary judgment. This is not our view of the matter. Under the authorities above cited, our study of the record convinces us that the action taken by the district court was proper. In short, we agree with the district court's analysis of the matter and its granting of summary judgment in favor of U. S. West on claims 1, 2, 3 and 5 of the complaint. As indicated, the district court, *inter alia,* dismissed claim 4 of the complaint against both U. S. West and Hedge on August 29, 1996, and Pettis' brief in this court makes no challenge

to that order.  Pettis' brief in this court challenges only the district court's ruling of June 3, 1997.

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge